# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

─────────

No. 15-30004

─────────

United States Court of Appeals
Fifth Circuit

**FILED**

October 19, 2015

Lyle W. Cayce
Clerk

WILLIAM E. BARTEL, as personal representative of the Estate of Silas B. Bishop,

      Plaintiff - Appellee

v.

ALCOA STEAMSHIP COMPANY, INCORPORATED; CENTRAL GULF LINES, INCORPORATED; CENTRAL GULF STEAMSHIP CORPORATION; CROWLEY MARINE SERVICES, INCORPORATED, Successor by Merger Delta Steamship Lines, Incorporated, formerly known as Mississippi Shipping Company; DELTA STEAMSHIP LINES, INCORPORATED; EMPIRE TRANSPORT, INCORPORATED; FARRELL LINES, INCORPORATED, formerly known as American South African Lines; JAMES RIVER TRANSPORT, INCORPORATED; CHAS. KURZ & COMPANY, individually and/or as Successor-in-Interest Keystone Shipping Company, Successor-in-Interest Keystone Tankship Corporation; MARINE NAVIGATION COMPANY; CROWLEY MARITIME CORPORATION, individually and/or as Successor-in-Interest Marine Transport Lines, Incorporated; MATSON NAVIGATION COMPANY, INCORPORATED; NATIONAL BULK CARRIERS, INCORPORATED; OGDEN LEADER STRANSPORT, INCORPORATED; PAN ATLANTIC STEAMSHIP COMPANY; SEA-LAND SERVICE, INCORPORATED; WABASH TRANSPORT, INCORPORATED; WATERMAN STEAMSHIP CORPORATION; MARINE TRANSPORT LINES, INCORPORATED; KEYSTONE SHIPPING COMPANY; CENTRAL GULF LINES, INCORPORATED, individually and/or as Successor-in-Interest Central Gulf Steamship Corporation,

      Defendants - Appellants

---------------------------------------------------

Cons w/15-30005

No. 15-30004 c/w 15-30005 c/w 15-30032

WILLIAM E. BARTEL, As personal representative on behalf of Estate of Joseph L. Dennis,

　　　　　Plaintiff - Appellee

v.

AMERICAN EXPORT ISBRANTSEN; FARRELL LINES, INCORPORATED, on its own behalf and, formerly known as American South African Lines, Successor-in-Interest American Export Lines, Incorporated formerly known as American Isbrandtsen Lines, Incorporated, incorrectly named American Export Isbrandsten; AMERICAN EXPORT LINES, INCORPORATED; AMERICAN TRADING & PRODUCTION CORPORATION; AMERICAN TRADING TRANSPORTATION COMPANY; CENTRAL GULF LINES, INCORPORATED, Individually and/or Successor-in-Interest Central Gulf Steamship Corporation; CHAS. KURZ ; COMPANY, Individually and/or Successor-in-Interest Keystone Shipping Company Successor-in-Interest Keystone Tankship Corporation; FARRELL LINES, INCORPORATED; TRINIDAD CORPORATION,

　　　　　Defendants - Appellants

　------------------------------------------------
Cons w/15-30032

LAWRENCE CRAIG,

　　　　　Plaintiff - Appellee

v.

RIO GRANDE TRANSPORT, INCORPORATED; SEA-LAND SERVICE, INCORPORATED; WATERMAN STEAMSHIP CORPORATION,

　　　　　Defendants - Appellants

　　　　　　　　　　————————————

2

No. 15-30004 c/w 15-30005 c/w 15-30032

Appeals from the United States District Court
for the Middle District of Louisiana

———

Before REAVLEY, ELROD, and HAYNES, Circuit Judges.

REAVLEY, Circuit Judge:

This consolidated action involves claims arising from the plaintiffs' alleged exposure to asbestos aboard vessels operated or owned by the various defendants. We must determine whether the cases, originally filed in state court, properly belong in federal court.

Plaintiffs Silas B. Bishop, Joseph L. Dennis, and Lawrence R. Craig worked for decades as merchant mariners aboard many different vessels and for many different employers. With their respective lawsuits, each alleges that he was exposed to asbestos over the course of his service and suffered serious disease or death as a result.[1] The plaintiffs sued their former employers in Louisiana state court under the Jones Act and general maritime law (unseaworthiness). They alleged that their injuries were attributable to the employers' failure to warn of the dangers of asbestos, to train their crews in using asbestos-containing products, and to adopt procedures for the safe installation and removal of asbestos. While all three plaintiffs served on various vessels during their careers, each of them served on at least one United States Naval Ship. United States Naval Ships are owned by the Navy but operated by civilian contractors. Here, Navy-owned vessels aboard which the plaintiffs worked were operated by defendants Mathiasen Tanker Industry, Incorporated, American President Lines Limited, and American Overseas Marine Corporation (the "Federal Officer Defendants").[2]

———

[1] Bishop and Dennis are deceased, and their estates are represented by William E. Bartel, the named party.

[2] These Federal Officer Defendants have since been dismissed from the action. While the claims against them gave rise to potential removability we now consider, our analysis is

No. 15-30004 c/w 15-30005 c/w 15-30032

The defendants argue that removal was warranted under the Federal Officer Removal Statute, 28 U.S.C. §1442(a)(1). Under this statute, an action "against or directed to . . . any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office" may be removed to federal court. 28 U.S.C. § 1442(a)(1). To qualify for removal, defendants must show that they are "persons" within the meaning of the statute, "that the defendants acted pursuant to a federal officer's directions and that a causal nexus exists between the defendants' actions under color of federal office and the plaintiff's claims." *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398–400 (5th Cir. 1998). Additionally, they must assert a "'colorable federal defense.'" *Id.* at 400. The defendant bears the burden of making this showing, and we review the district court's determination *de novo. Id.* at 397.

It is undisputed that defendants, as corporate entities, qualify as "persons" within the meaning of the Federal Officer Removal Statute. *See Winters*, 149 F.3d at 398. For removal to be proper, it is necessary but not sufficient for a defendant to show it "acted pursuant to a federal officer's directions." *Winters*, 149 F.3d at 398. The defendant must also show "that a causal nexus exists between the defendants' actions under color of federal office and the plaintiff's claims." *Id.*

Here, defendants argue that the Federal Officer Defendants acted pursuant to a federal authority "when they contracted with the United States

---

unaffected by the dismissals. "To determine whether jurisdiction is present for removal, we consider the claims in the state court petition as they existed at the time of removal." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Moreover, "elimination of the federal officer from a removed case does not oust the district court of jurisdiction." *IMFC Prof'l Svcs. of Florida, Inc. v. Latin Am. Home Health, Inc.*, 676 F.2d 152, 159 (5th Cir. Unit B 1982). Our analysis proceeds as if the Federal Officer Defendants had not been dismissed.

No. 15-30004 c/w 15-30005 c/w 15-30032

Navy to operate and crew Navy ships with civilians." (Blue at 13.)  And, they argue that this same fact also establishes a causal nexus exists between the plaintiff's injuries and the defendants' actions under color of office.  To support these arguments, they provide a contract governing the relationship between the federal government and *one* Federal Officer Defendant, Mathiasen Tanker Industry, Incorporated.  They also provide evidence that vessels operated by the remaining Federal Officer Defendants were Navy-owned.

The defendants' argument collapses the inquiry from two steps to one. That is, they believe the Navy's mere ownership and theoretical control of the vessels provides an adequate "causal nexus" between the Federal Officer Defendants' actions and the plaintiffs' claims.  Inasmuch as the plaintiffs allege injuries arising from the intrinsic attributes of the ships, as delivered to the Federal Officer Defendants, defendants could have argued that mere operation of the ships supplies an adequate causal nexus.  That is to say, if mere operation of intrinsically dangerous (unseaworthy) vessels caused injuries for which the Federal Officer Defendants may be liable, then that same mere operation may provide a causal nexus supporting removal.  It is therefore important to understand the nature of the plaintiffs' allegations.  As mentioned already, the plaintiffs' complaints are primarily concerned with failure to warn, failure to train, and failure to adopt procedures for the safe installation and removal of asbestos.  These allegations are not concerned so much with vessel design as they are with vessel operation.  At oral argument, however, the defendants argued the plaintiffs' allegations of unseaworthiness are broader and encompass the intrinsically unsafe nature of the vessels.  We first address those claims concerned with the defendants' acts and omissions—the "failure to warn claims."  We then turn to the claims concerned with the intrinsic dangers posed by mere operation of the vessels—the "unseaworthiness claims."

No. 15-30004 c/w 15-30005 c/w 15-30032

In adopting the magistrate judge's report and recommendation, the district court found that defendants failed to establish an adequate causal link because plaintiffs' claims were "analogous" to "failure to warn cases" where the government owns a work space infected with asbestos and the civilian contractor operating the facility fails to warn of the danger or otherwise mitigate the risk. *See Bartel v. Alcoa Steamship Co.*, 64 F.Supp.3d 843, 855 (M.D. La. 2014) (collecting cases). In their briefing, the defendants directly attacked this reasoning, relying extensively on an unpublished 1998 magistrate judge's ruling, *Lalonde v. Delta Field Erection*. *See* Case No. CIV.A.96-3244-B-M3, 1998 WL 34301466, at \*1 (M.D. La. Aug. 6, 1998). That case, however, is distinguishable and cuts squarely against the defendants.

Like this case, *Lalonde* involved allegations of failure to warn, supervise, and make safe. *See id.* at \*1. There, however:

> *The federal government imposed* numerous safety requirements at the facility, such as the wearing of protective equipment. *The United States required* that safety meetings be held in each department on a monthly basis, and, in addition, required plant-wide safety meetings be held on a monthly basis. *The government dictated* the topics of these meetings. In summary, [the defendant] operated a federal government-owned facility, exclusively for the government, *under the oversight and ultimate control of officers of the federal government.*

*Id.* at \*3 (emphases added).

Thus, not only did the federal government own the facility, it exercised direct and continuing oversight of its operations, including safety briefings and practices. If there were any failure to warn in *Lalonde*, the failure was caused by the government's instructions.

This approach is proper. For example, in *Winters*, where the defoliator Agent Orange allegedly caused terminal cancer in the plaintiff, we asked "whether the government specified the composition of Agent Orange so as to supply the causal nexus between the federal officer's directions and the

6

plaintiff's claims." 149 F.3d at 398. After surveying a considerable evidentiary record, we concluded "that *the government's detailed specifications* concerning the make-up, packaging, and delivery of Agent Orange, *the compulsion to provide the product to the government's specifications*, and the *on-going supervision the government exercised* over the formulation, packaging, and delivery of Agent Orange" established that the defendants there "acted pursuant to federal direction and that a direct causal nexus exist[ed] between the defendants' actions taken under color of federal office and [the plaintiff's] claims." *Id.* at 400 (emphases added).

Here, the defendants can do no better than to show that the federal government owned the vessels in question. Even with respect to the Federal Officer Defendant that produced its contract with the government, Mathiasen Tanker Industry, Incorporated, there is no evidence showing that the government actually exercised continuing oversight over operations aboard ship. The contract provides that, in the absence of specific orders from the Navy, the vessel was to be operated "according to accepted commercial practices." There is no evidence that the government ever issued orders of any kind, let alone orders relating to safety procedures or asbestos. What little evidence there is suggests the Federal Officer Defendants operated the vessels in a largely independent fashion and, at a minimum, were free to adopt the safety measures the plaintiffs now allege would have prevented their injuries. Upon this ground the district court found remand proper. We agree.[3]

---

[3] Defendants argue that requiring evidence like contracts or orders "places an unreasonable burden on the Federal Officer Defendants and ignores the fact that it ha[s] been more than twenty years since Plaintiffs-Appellees' [*sic*] sailed on board these vessels and almost fifty years since some of the pertinent contracts were originally executed." While the defendants may find it inconvenient and difficult to locate evidence relating to events that occurred decades ago, that difficulty does not affect the burden of proof or permit us to guess that the evidence, if it were produced, would favor the defendants.

No. 15-30004 c/w 15-30005 c/w 15-30032

At oral argument, the defendants introduced a new theory.  Defendants faulted the district court and the magistrate judge for analyzing the plaintiffs' respective cases as failure-to-warn cases and overlooking the general unseaworthiness claims—*i.e.*, claims that the work environment was intrinsically unsafe.  Counsel for defendants labelled this supposed error a "very important point" and "a major point of our complaints about what the magistrate judge did."  When asked if this argument had been made in either the initial opposition to plaintiffs' motions to remand or in the subsequent objections to the magistrate judge's report and and recommendation, counsel for the defendants weakly offered that it "was mentioned in there."  We have reviewed the oppositions and objections.  The argument was never made.  Moreover, the argument cannot be gleaned from the defendants' appellate briefs.

Absent "extraordinary circumstances," we will not consider an argument raised for the first time on appeal.  *N. Alamo Water Supply Corp. v. City of San Juan, Tex.*, 90 F.3d 910, 916 (5th Cir. 1996).  Further, "we do not generally consider points raised for the first time at oral argument."  *Whitehead v. Food Max of Mississippi, Inc.,* 163 F.3d 265, 270 (5th Cir. 1998).  There are no extraordinary circumstances here.  *See N. Alamo Water Supply Corp.*, 90 F.3d at 916 ("Extraordinary circumstances exist when the issue involved is a pure question of law and a miscarriage of justice would result from our failure to consider it.").  No miscarriage of justice will result if plaintiffs' claims are heard in state court rather than federal court.  Without the benefit of adversarial briefing and trial court consideration, we decline the defendants' belated invitation to greatly expand the scope of federal officer removal jurisdiction in cases involving USNS vessels.  We express no view on the merits of the argument.

No. 15-30004 c/w 15-30005 c/w 15-30032

Because defendants did not establish the necessary causal nexus between their actions and the plaintiffs' claims, we need not decide whether the defendants have asserted a colorable federal defense. Likewise, we need not address plaintiffs' additional arguments in favor of remand.

AFFIRMED.