# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-30058

United States Court of Appeals
Fifth Circuit

**FILED**
January 20, 2017

Lyle W. Cayce
Clerk

HOWARD ZERINGUE,

Plaintiff–Appellee,

v.

CRANE COMPANY,

Defendant–Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before CLEMENT, PRADO, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Howard Zeringue sued Crane Co. (Crane) and twenty other defendants in state court, asserting strict liability, negligence, and failure to warn claims to recover for injuries allegedly caused by asbestos exposure. Crane removed the case to federal court pursuant to the federal-officer removal statute. After the district court remanded the case to state court, Crane appealed. We reverse and remand.

**I**

Zeringue asserts that he was first **exposed** to asbestos in 1952 while deployed with the United States Navy, in which he served in various capacities as an active duty sailor aboard three Navy vessels until 1956. He alleges that

he was then exposed to asbestos at two other jobs, including one in which he sold insurance in Avondale Shipyard near ships that contained asbestos, but he does not provide the time period during which this exposure allegedly occurred.    At no point does Zeringue specify which defendants allegedly exposed Zeringue during which jobs nor which specific objects contained asbestos at these various jobsites.   Instead, Zeringue maintains that "[a]t all times relevant" thirteen of the twenty-one defendants, including Crane, "designed, evaluated, manufactured, packaged, furnished, stored, handled, transported, installed, distributed, sold and/or supplied asbestos-containing products to Plaintiff's jobsites where he was exposed."

Crane removed the case to the Eastern District of Louisiana pursuant to the federal-officer removal statute, 28 U.S.C. § 1442(a)(1).    Crane's involvement in this litigation stems from contracts it obtained to manufacture and provide parts, predominately valves, for the Navy.  In its removal petition, Crane asserted that "any product that [Zeringue] alleges Crane Co. manufactured for or supplied to the Navy (and any product literature, labeling, or warnings that accompanied that product) would be subject to Navy specifications and requirements" and that, accordingly, "[f]ederal officers exercised their discretion regarding whether (1) asbestos was used in the product, and (2) whether a warning would accompany the product."  To bolster this claim, Crane provided affidavits and sample military specifications. Crane maintains that this evidence establishes that all products provided to the Navy required compliance with Navy specifications, some of which required asbestos use, and could not be installed on Navy ships unless the Navy Machinery Inspectors first determined that the products did in fact comply with the detailed specifications.

Zeringue moved to remand the case to state court.  The district court determined   that   although   Crane   had   "allege[d]   all   of   the   elements

for . . . federal officer removal" and had provided evidence that permitted a "plausibl[e] assum[ption] that any equipment that Crane built for the Navy was indeed subject to detailed specifications," Crane had not established that the "government exercised *its* discretion, with respect to the specific design and warning problems that are implicated by Zeringue's claims." Based on this deficiency, the district court granted Zeringue's motion. Crane appealed.

## II

We review a district court's decision on a motion to remand de novo.[1] We have recently observed with regard to 28 U.S.C. § 1442 that "[a]lthough the principle of limited federal court jurisdiction ordinarily compels us to resolve any doubts about removal in favor of remand, . . . courts have not applied that tiebreaker when it comes to the federal officer removal statute in light of its broad reach."[2]

Section 1442 permits, in pertinent part, "any person acting under [an officer] of the United States or of any agency thereof"[3] to remove a state suit to federal court if any of the plaintiff's claims[4] are "for or relating to any act under color of such office."[5] We have interpreted this part of the statute to require a defendant to show (1) that it is a person within the meaning of the statute, (2) that it has "a colorable federal defense," (3) that it "acted pursuant to a federal officer's directions," and (4) "that a causal nexus exists between [its] actions under color of federal office and the plaintiff's claims."[6]

---

[1] *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 462 (5th Cir. 2016).

[2] *Id.* (citing *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007); *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

[3] 28 U.S.C. § 1442(a)(1).

[4] *Savoie*, 817 F.3d at 463 ("[R]emoval of the entire case is appropriate so long as a single claim satisfies the federal officer removal statute.").

[5] § 1442(a)(1).

[6] *Bartel v. Alcoa S.S. Co.*, 805 F.3d 169, 172 (5th Cir. 2015) (internal quotation marks omitted) (quoting *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398-400 (5th Cir. 1998)).

No. 16-30058

## A

Although Crane is a corporation, "the Supreme Court has long recognized that the removal statute also applies to private persons and corporate entities 'who lawfully assist the federal officer in the performance of his official duty.'"[7]  Crane is a "person" for purposes of § 1442.

## B

Section 1442 "is a pure jurisdictional statute" in which "the raising of a federal question in the officer's removal petition . . . constitutes the federal law under which the action against the federal officer arises for [Article] III purposes."[8]  It permits a federal *defense*, which is generally statutorily impotent to establish subject matter jurisdiction,[9] to serve as the federal question that endues the court with jurisdiction.[10]  As with a federal claim that creates federal question jurisdiction,[11] a federal defense fulfilling this same function does not need to be "clearly sustainable," as § 1442 does not require a federal official, or a person acting under an official, to "win his case before he can have it removed," but rather the defense needs only to be "colorable."[12]  Although neither we nor the Supreme Court has defined "colorable" in the context of § 1442, the Supreme Court has clarified that a non-colorable federal claim, for the purposes of federal question jurisdiction, is a claim that is "'immaterial and made solely for the purpose of obtaining jurisdiction' or is

---

[7] *Savoie*, 817 F.3d at 461 (quoting *Watson*, 551 U.S. at 151).

[8] *Mesa v. California*, 489 U.S. 121, 136 (1989).

[9] *See New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 328-29 (5th Cir. 2008).

[10] *Mesa*, 489 U.S. at 129, 136-37.

[11] *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 n.10 (2006).

[12] *Jefferson Cty. v. Acker*, 527 U.S. 423, 431, 432 (1999) (internal quotation marks omitted) (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).

'wholly insubstantial and frivolous.'"[13]    Because § 1442 allows the assertion of a colorable federal defense to serve the function typically reserved for the assertion of a colorable federal claim, it follows that a non-colorable federal defense is a defense that is immaterial and made solely for the purpose of obtaining jurisdiction or that is wholly insubstantial and frivolous.

Crane asserts government-contractor immunity, originally articulated in *Boyle v. United Technologies Corp.*,[14] as its federal defense.  This defense is an extension of the immunity afforded to the federal government for the performance of discretionary actions pursuant to 28 U.S.C. § 2680(a).[15]  The logic is that because a contractor will pass any added costs from litigation risk exposure to the government, "[i]t makes little sense to insulate the Government against financial liability for the judgment that a particular feature of military equipment is necessary when the Government produces the equipment itself, but not when it contracts for the production."[16]  Accordingly, government contractors are also immune from suit for design defects if "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."[17]

The first two conditions ensure that the government exercised *its* discretion, as required by the statutory source from which government-

---

[13] *Arbaugh*, 546 U.S. at 513 n.10 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)); *see also Colorado v. Symes*, 286 U.S. 510, 519 (1932) (holding that federal-officer removal requires that a claim be "not without foundation and . . . made in good faith").

[14] 487 U.S. 500 (1988).

[15] 28 U.S.C. § 2680(a) (providing the government with immunity against "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused").

[16] *Boyle*, 487 U.S. at 512.

[17] *Id.*

contractor immunity derives, by considering "the design feature in question,"[18] which the government can do by "evaluat[ing] th[at] design feature."[19]  The government contractor can then prove that it conformed to the government specifications by showing "[a]cceptance and use of an item following its production."[20]

The gravamen of Crane's claim of government-contractor immunity is that "any product that [Zeringue] alleges Crane Co. manufactured for or supplied to the Navy (and any product literature, labeling, or warnings that accompanied that product) would be subject to Navy specifications and requirements," with which Crane would have complied.  To support this claim, Crane supplied sample military specifications and three affidavits.  These documents establish that Crane's claim to government-contractor immunity is colorable.

Two of Crane's provided military specifications, one from 1938 and one from 1978, required asbestos in the packing used in certain valves.  Crane also provided a military specification from 1966 that required asbestos use for pipe covering, insulation, and millboard.  Although Zeringue correctly recognizes that these specifications do not cover the specific period during which he served upon Navy vessels, he admitted in his briefing before the district court that "it is a bit of a stretch to even conclude that Crane Co.'s affiants" (and, logically, Crane itself) "have personal knowledge of the products and warnings at issue in this case, as allegations regarding specific products simply were not made

---

[18] *Id.*

[19] *Kerstetter v. Pac. Sci. Co.*, 210 F.3d 431, 435 (5th Cir. 2000).

[20] *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 420 (5th Cir. 2001); *see also Kerstetter*, 210 F.3d at 435-36 ("Extensive government involvement in the design, review, development and testing of a product, as well as extensive acceptance and use of the product following production, is evidence that the product line generally conformed with the government-approved specifications.").

[in the petition for damages]." Certainly, a specific contract that establishes that the government required asbestos for the parts with which Zeringue came into contact would be ideal, but to require that level of specificity to establish a *colorable* federal defense would equate to requiring Crane to "win his case before he can have it removed," a requirement which we cannot impose.[21]

The three submitted affidavits bolster Crane's defense. Anthony Pantaleoni, Crane's Vice-President of Environment, Health and Safety, stipulated that "[a]ll equipment supplied by Crane Co. to the Navy was built in accordance with [military] specifications" and that the military specifications "governed all aspects of a piece of equipment . . . including materials." Retired Rear Admiral David Sargent, whose assignments in the Navy primarily involved the operation and maintenance of Navy ships, echoed these claims, noting that the uniformity necessary "to ensure commonality across systems" meant that "[e]quipment could not have been installed aboard Navy vessels unless it was first determined by the Navy to be in conformity with all applicable Navy specifications."

The final affidavit is from Dr. Samuel Forman, a former Navy physician tasked with investigating the Navy's "historical handling and knowledge of various industrial hygiene issues, including asbestos disease." Dr. Forman's affidavit supports Crane's assertion that the Navy knew as much or more than Crane did about the dangers of asbestos exposure. Specifically, Dr. Forman stated that the Navy's knowledge of asbestos dangers "has been quite complete when compared to available knowledge over time, and at least by the early 1940s, the Navy had become a leader in the field of occupational medicine relating to, among other things, asbestos dust inhalation exposure." Dr.

---

[21] *See Jefferson Cty. v. Acker*, 527 U.S. 423, 431, 432 (1999) (internal quotation marks omitted) (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).

No. 16-30058

Forman's affidavit demonstrates that by at least 1939, the Navy had learned that exposure to asbestos dust for prolonged periods could result in "an industrial disease of the lungs."

These sample military specifications and affidavits are not definitive proof that Zeringue's asbestos exposure resulted from the Navy's—not Crane's—discretionary decision, nor are they definitive proof that Crane did not need to supply the Navy with information regarding the dangers of asbestos because of the Navy's existing knowledge. But definitive proof is not necessary for removal, and the military specifications and affidavits do suffice as a not-insubstantial and non-frivolous basis upon which Crane may assert government-contractor immunity.

### C

Section 1442 also requires a government contractor seeking removal to establish that it was "acting under" an officer of the United States or an agency when the acts giving rise to the complaint occurred.[22] Although the words "acting under" are undoubtedly broad, the Supreme Court has clarified that they "must refer to . . . a relationship that involves 'acting in a certain capacity, considered in relation to one holding a superior position or office.'"[23] This relationship "typically involves 'subjection, guidance, or control,'"[24] but, at a minimum, it "must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior."[25]

Direct oversight of the specific acts that give rise to a plaintiff's complaint is not required to satisfy this part of § 1442. In *Wilde v. Huntington Ingalls, Inc.*, an unpublished decision, this court held that, based on a

---

[22] *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007).

[23] *Id.* at 151 (quoting 18 OXFORD ENGLISH DICTIONARY 948 (2d ed. 1989)).

[24] *Id.* (quoting WEBSTER'S NEW INTERNATIONAL DICTIONARY 2765 (2d ed. 1953)).

[25] *Id.* at 152.

government contractor's averment that "when it allegedly exposed [the plaintiff] to asbestos, it was producing ships pursuant to the direction of the United States Maritime Commission," the contractor was acting under a federal officer.[26]   The court noted that the mere fact that "the federal government would have had to build those ships had [the defendant] not done so" satisfied this requirement.[27]  This reasoning is persuasive.

Crane's provision of parts in an effort to assist the Navy's construction of vessels satisfies the "acting under" requirement.  The military specifications and affidavits that Crane provided suggest that the Navy exercised a significant degree of guidance and control over Crane.  These affidavits, as noted above, state that "[a]ll equipment supplied by Crane Co. to the Navy was built in accordance with [military] specifications," which "governed all aspects of a piece of equipment . . . including materials," and "[e]quipment could not have been installed aboard Navy vessels unless it was first determined by the Navy to be in conformity with all applicable Navy specifications."  Even absent this significant degree of oversight, the Navy directed Crane to build parts, and, had Crane not done so, the Navy would have had to build those parts instead.  In accordance with our duty to avoid "a narrow, grudging interpretation of § 1442(a)(1),"[28] we conclude that the facts in the record before us are sufficient to establish that Crane was "acting under" the Navy.

## D

Before 2011, § 1442 allowed the removal of a state suit against a federal officer, or a person acting under a federal officer, only when the state suit was "for any act under color of such office."[29]  In 2011 Congress extended § 1442 to

---

[26] 616 F. App'x 710, 713 (5th Cir. 2015) (per curiam).

[27] *Id.*

[28] *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

[29] Act of June 25, 1948, ch. 646, 62 Stat. 938 (codified at 28 U.S.C. § 1442).

allow the removal of a state suit "for *or relating to* any act under color of such office."[30]  The plain meaning of the added language broadens the scope of the statute as "the ordinary meaning of [relating to] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'"[31]

This element of § 1442, both before and after the 2011 amendment, requires the removing party to establish "a nexus, a 'causal connection' between the charged conduct and asserted official authority."[32]  This causal nexus requirement ensures that removal "only arises when 'a federal interest in the matter' exists."[33]  Even before the 2011 amendment, the causal connection did not need to be "airtight," because such a requirement would "defeat the purpose of the removal statute."[34]  This reasoning led the Supreme Court to remark in *Willingham v. Morgan* that "it [is] *sufficient*" for a federal officer in a civil suit to establish the requisite causal connection by showing that the officer's "relationship to [the plaintiff] derived solely from [the officer's] official duties."[35]  This court, in rejecting the argument that negligent acts are not within a person's official authority, clarified that an act is within an officer's authority, and within the scope of § 1442, "so long as he does not depart from the course of his duty so that it becomes his personal act."[36]  The 2011 amendment expanded the breadth of acts sufficient to establish a causal nexus

---

[30] Removal Clarification Act of 2011, Pub. L. No. 112-51, § 2(b)(2), 125 Stat. 545 (codified at 28 U.S.C. § 1442) (emphasis added); *see also In re Commonwealth's Motion to Appoint Counsel*, 790 F.3d 457, 467 (3d Cir. 2015).

[31] *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (quoting BLACK'S LAW DICTIONARY 1158 (5th ed. 1979)).

[32] *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999) (quoting *Willingham*, 395 U.S. at 409).

[33] *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998) (quoting *Willingham*, 395 U.S. at 406).

[34] *Acker*, 527 U.S. at 432.

[35] 395 U.S. at 409 (emphasis added).

[36] *Allman v. Hanley*, 302 F.2d 559, 561 (5th Cir. 1962).

even further.  It remains, however, that the causal nexus inquiry "must . . . be tailored to fit the facts of each case."[37]

Despite the relatively broad reach of the causal nexus requirement, Zeringue contends that Crane has not established the existence of a causal nexus because "the causal connection must depend upon a showing of precise federal direction," which Zeringue argues Crane has not established.  However, the plain language of § 1442 cannot bear Zeringue's construction.

Crane has established the requisite causal nexus between the charged conduct and its official authority.  Crane's relationship with Zeringue derives solely from its official authority to provide parts to the Navy, and that official authority *relates to* Crane's allegedly improper actions, namely its use of asbestos in those parts.  Although the court cannot attenuate the causal nexus requirement "to the point of irrelevance,"[38] the plain import of the phrase "relating to" is that *some* attenuation is permissible, attenuation which is irreconcilable with Zeringue's proposed requirement of precise federal direction.

Moreover, were we to require the level of precision requested by Zeringue, we also would unduly undermine the purpose of § 1442 by impermissibly requiring defendants seeking removal, like Crane, to establish more than a colorable claim that a purported design defect was the result of a federal officer's discretion.  Requiring "precise federal direction" to show a causal nexus, as Zeringue urges us to do, would not only render the "colorable" federal defense requirement a nullity, as the causal nexus requirement would hold the removing party to a heightened burden, but also would be contrary to

---

[37] *Willingham*, 395 U.S. at 408.

[38] *Wilde v. Huntington Ingalls, Inc.*, 616 F. App'x 710, 713 (5th Cir. 2015) (per curiam).

the Supreme Court's admonishment that "the test for removal should be broader, not narrower, than the test for official immunity."[39]

Our recent holding in *Bartel v. Alcoa Steamship Co.*[40] is not to the contrary. In *Bartel*, the Navy—not the contractors—*supplied* ships that contained asbestos to the defendants.[41] The defendants argued that there was a causal nexus between their authority to operate the ships, derived simply from the Navy providing the ships, and the charged conduct of failing "to warn of the dangers of asbestos, to train their crews in using asbestos-containing products, and to adopt procedures for the safe installation and removal of asbestos."[42] The charged conduct was private conduct that implicated no federal interest. Because the very purpose of the causal nexus requirement is to ensure that removal "only arises when 'a federal interest in the matter' exists,"[43] an extension of § 1442 to allow those defendants to remove would have stretched the causal nexus requirement to the point of irrelevance.

Conversely, if we were to decline to extend the protection of § 1442 to this case, in which the Navy directed Crane to provide parts, we would render irrelevant Congress's decision to allow the removal of suits for acts "relating to" any act taken under official authority. Again, we will not follow such "a narrow, grudging interpretation of § 1442(a)(1)."[44] Crane has established a casual nexus.

---

[39] *Willingham*, 395 U.S. at 404.

[40] 805 F.3d 169 (5th Cir. 2015).

[41] *Id.* at 172, 174.

[42] *Id.* at 171, 172.

[43] *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998) (quoting *Willingham*, 395 U.S. at 406).

[44] *Willingham*, 395 U.S. at 407.

No. 16-30058

## III

Crane has established the right to remove the suit pursuant to § 1442. Because "removal of the entire case is appropriate so long as a single claim satisfies the federal officer removal statute," we do not determine whether Crane independently established the right to remove Zeringue's failure to warn claim.[45]

*     *     *

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND for proceedings consistent with this opinion.

---

[45] *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 463 (5th Cir. 2016).

13