# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-30652

United States Court of Appeals
Fifth Circuit

**FILED**
March 11, 2019

Lyle W. Cayce
Clerk

JAMES A. LATIOLAIS,

     Plaintiff - Appellee

v.

HUNTINGTON INGALLS, INCORPORATED, formerly known as
Northrop Grumman Shipbuilding, Incorporated, formerly known as
Northrop Grumman Ship Systems, Incorporated, formerly known as
Avondale Industries, Incorporated,

     Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JONES, HAYNES, and OLDHAM, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Like several actions before it, this case involves a Plaintiff who was exposed to asbestos at the Avondale shipyard and eventually contracted mesothelioma. The Defendant removed the case to federal court pursuant to 28 U.S.C. § 1442(a)(1), the "federal officer removal statute," but the district court remanded to state court. Constrained by a welter of conflicting precedent, we must affirm.

No. 18-30652

## BACKGROUND

During the 1960s and 1970s, the United States Navy contracted with the Defendant Avondale[1] to build and refurbish naval vessels. Most of the contracts in the 1960s required asbestos for thermal insulation. According to Avondale's expert, a marine engineer and naval historian, the contracts obligated Avondale "to comply with government plans and specifications, and the federal government had the right to and did exercise supervision over the process to ensure such compliance." Importantly, however, a Navy ship inspector who worked at Avondale during the 1960s testified that he and his colleagues "neither monitored nor enforced safety regulations" and "on the job safety during the construction of vessels for the United States government was the responsibility of Avondale Shipyards' safety department."

The Plaintiff, James Latiolais, formerly a machinist aboard the *USS TAPPAHANNOCK*, was exposed to asbestos while his ship underwent refurbishing at Avondale for several months. During the refurbishing process, Latiolais spent most of each day on the ship. In 2017, Latiolais was diagnosed with mesothelioma. He died in October, 2017.[2]

Latiolais sued Avondale in Louisiana state court for causing him to contract mesothelioma. He asserts, *inter alia*, that Avondale negligently failed to warn him about asbestos hazards and failed to provide adequate safety equipment. He did not allege strict liability claims against Avondale.

Avondale removed the case to federal court under 28 U.S.C. § 1442(a)(1). Latiolais sought remand, however, and the district court granted the motion.

---

[1] The Defendant Huntington Ingalls was formerly known by many names including Northrop Grumman Shipbuilding and Avondale Industries. Because the parties refer to the Defendant as Avondale, the court does the same.

[2] Although Latiolais died shortly after filing his petition in Louisiana state court, no party argues that his death affects any issue in this appeal.

No. 18-30652

It ruled in relevant part that because Avondale had not met the "causal nexus" requirement for officer removal, *i.e.* had not shown that the United States or any of its officials exercised any control over Avondale's safety practices, removal under this statute was improper.  Avondale timely appealed.

## STANDARD OF REVIEW

Although an order remanding a case to state court is not generally reviewable, "an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise."  28 U.S.C. § 1447(d).  "We review the district court's remand order de novo without a thumb on the remand side of the scale." *Legendre v. Huntington Ingalls, Inc.*, 885 F.3d 398, 400 (5th Cir. 2018) (quotation marks omitted).

## DISCUSSION

On appeal, Avondale makes three arguments as to why officer removal is proper.  First, as amended in 2011, the removal statute now requires only that a federal directive "relates to"—but not necessarily has a causal relationship to—the Plaintiffs' injuries.  Second, Avondale asserts that it has satisfied the causal nexus requirement by showing "that its relationship with Mr. Latiolais derived solely from its work for the federal government."  Third, Avondale seeks to avoid precedents of this court contrary to the foregoing propositions.  Unfortunately, the failure of the third argument dooms the others.

## I.    The "relating to" language

The federal officer removal statute was amended in 2011 to broaden the basis for removal to federal court of claims brought against officers or agents of the federal government and those working under its direction.  Thus, the statute states that an action filed in state court may be removed to federal court by: "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, *for or relating to* any act under color of such office."  28 U.S.C. § 1442(a)(1) (emphasis added).

The Supreme Court has observed more than once that when the term "relating to" appears in a statute, it implies broad and comprehensive coverage. *See, e.g., Morales v. Grans World Airlines, Inc.,* 504 U.S. 374, 383, 112 S. Ct. 2031, 2037 (1992) ("The ordinary meaning of these words is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'") (quoting BLACK's LAW DICT. 1158 (5th ed. 1979)); *see also Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96-98, 103 S. Ct. 2890, 2899-2900 (1983).  From the text alone, enhanced by the Supreme Court's understanding of its language, Avondale's argument has considerable appeal.  Avondale's work, after all, clearly related to the federal government's directive to employ asbestos insulation.  Under the "relating to" test, Avondale would preserve a federal venue.

In this court, however, what's past is prologue.  Before the amendment, Section 1442 authorized removal of a suit against a federal officer, or person acting under a federal officer, only when the suit was "*for* any act under color of such office."  28 U.S.C. § 1442(a)(1) (1996) (emphasis added).  To successfully remove a case under the earlier version, this court held, quite reasonably, that a defendant must show that it is a person within the meaning of the statute, that it has a colorable federal defense, that it acted pursuant to a federal

officer's directions and that a causal nexus exists between its actions under color of federal office and the plaintiff's claims. *Winters v. Diamond Shamrock Chem. Co.,* 149 F.3d 387, 398-400 (5th Cir. 1998). Further, under the causal nexus test, "mere federal involvement does not satisfy the causal nexus requirement; instead, the defendant must show that its actions taken pursuant to the government's direction or control caused the plaintiff's specific injuries." *Savoie v. Huntington Ingalls, Inc.,* 817 F.3d 457, 462 (5th Cir. 2016).

This court applied to the post-2011 amended statute the "causal nexus" test articulated for the prior statute. *Bartel v. Alcoa S.S. Co., Inc.,* 805 F.3d 169, 172 (5th Cir. 2015). In *Bartel*, the court quoted the post-2011 statute but adopted the same causal nexus test that pre-dates the new statute. *Id.* at 172, 174-75. Three years later, when Avondale raised the same textual argument that it makes now, the court held that *Bartel'*s status as precedent precluded one panel from overruling the former decision. *Legendre v. Huntington Ingalls, Inc.*, 885 F.3d 398, 403 (5th Cir. 2018). Although this court's precedents on the interpretation of Section 1442(a)(1) have proliferated since *Bartel,* the reasoning of *Legendre* continues to control our work.

It is true that in *Zeringue*, a case decided after *Bartel* but before *Legendre*, this court appeared to relax the causal nexus standard in light of the post-2011 "relating to" language, but reliance on that case is not appropriate. *Zeringue v. Crane Company*, 846 F.3d 785, 793 (5th Cir. 2017). *Zeringue* explained that the addition of the phrase "relating to" in the removal statute "broadens the scope of the statute as the ordinary meaning of [relating to] is a broad one," but "[i]t remains, however, that the causal nexus inquiry must . . . be tailored to fit the facts of each case." *Id.* (quotation marks omitted). Although these statements appear to give effect to the post-2011 "relating to" language, *Zeringue* ruled only on the propriety of removing a strict liability claim under this statute and specifically declined to consider a negligence-

based failure to warn claim. Before *Zeringue,* however, in a case brought against Avondale, this court had decided that claims for negligent exposure to asbestos could not be removed pursuant to *Bartel.* *Savoie,* 817 F.3d at 463.

In a case with similar facts to this one, the *Savoie* court relied on *Bartel* and found no causal nexus between Avondale's conduct and government requirements. Even though the government contracts required Avondale to build ships with asbestos, "the government had no control over the shipyard's safety procedures" and "the Navy neither imposed any special safety requirements on the shipyard nor prevented the shipyard from imposing its own safety procedures." *Id.* Accordingly, "the government's directions to the shipyard via the contract specifications did not cause the alleged negligence, and those claims do not support removal." *Id.*

In contrast, the *Savoie* plaintiff's strict liability claims were held to support removal,[3] and the court explained that, "[u]nlike claims based on negligence, those based on strict liability do not turn on discretionary decisions made by the shipyard." *Id.* at 465. "Thus, it is the government's detailed specifications, which the shipyard was contractually obligated to follow, that required the use of asbestos that allegedly caused [the Plaintiff's] death. This is enough to show a causal nexus between the . . . strict liability claims and the shipyard's actions under the color of federal authority." *Id.* at 465-66.[4]

The dichotomy between *Zeringue* and *Savoie* was adhered to by *Legendre,* where the plaintiffs sued Avondale for the plaintiff's asbestos

---

[3] The court concluded that removal was proper because "removal of the entire case is appropriate so long as a single claim satisfies the federal officer removal statute." *Savoie,* 817 F.3d at 463.

[4] Mere use of asbestos is a strict liability claim, whereas failure to warn is a negligence claim. *See Savoie,* 817 F.3d at 465 ("The strict liability claims rest on the mere use of asbestos . . . [u]nlike claims based on negligence, those based on strict liability do not turn on discretionary decisions made by the shipyard.").

disease based on the theory of negligent failure to warn, not strict liability. *Legendre*, 885 F.3d at 399. *Legendre* explained that "in *Zeringue*, we recognized that the 2011 amendment shifted the causal nexus calculus" but "[i]mportantly, in *Zeringue*, we explicitly reaffirmed *Bartel*." *Id.* at 401-02. *Legendre* also relied on *Savoie*. *Id.* at 401.

All of these cases post-date the 2011 amendment to Section 1442(a)(1), and all continue to cite *Bartel,* while drawing a distinction for removal purposes between claims for negligence (not removable) and strict liability (removable) pursuant to the causal nexus test. We are bound by this series of cases.

## II.    The Causal Nexus Test

Avondale attempts to demonstrate that even under the causal nexus test used in our case law, removal may be sustained. This contention is not persuasive.

Avondale's evidence has not changed since *Legendre*. Although the government contractually required Avondale to use asbestos in refurbishing the Navy vessels, Avondale once again "makes no showing that it was not free to adopt the safety measures the plaintiffs now allege would have prevented their injuries." *Legendre*, 885 F.3d at 403 (quotation marks omitted). From all appearances, Navy vessel inspectors at Avondale "neither monitored nor enforced safety regulations" and "on the job safety during the construction of vessels for the United States government was the responsibility of Avondale Shipyards' safety department." Avondale points to nothing to rebut this evidence. As the district court concluded, "[b]ased on the evidence produced by both parties, there is nothing to suggest that the Navy, in its official authority, issued any orders, specifications, or directives relating to safety procedures." Accordingly, Avondale has not shown a causal nexus under analogous exposure facts.

Avondale alleges instead that it has satisfied the causal nexus requirement because "its relationship with Mr. Latiolais derived solely from its work for the federal government." Avondale contends that in the *Bartel* line of cases, the plaintiffs were former employees (or their family members) who sued the employer defendants, whereas Latiolais, a Navy man, was never employed by Avondale, and Avondale's contact with him occurred solely because of its contracts with the federal government. In other words, Avondale's contention is that because its contact with Latiolais was solely due to its government work on the Navy ship on which Latiolais served, officer removal is proper.

This contention might have prevailed but for the discussions in our other cases. Avondale relies on three pre-*Bartel* Supreme Court cases and *Zeringue* for its proposition. *See Maryland v. Soper*, 270 U.S. 9, 46 S. Ct. 185 (1926); *Willingham v. Morgan*, 395 U.S. 402, 89 S. Ct. 1813 (1969); *Jefferson County v. Acker*, 527 U.S. 423, 119 S. Ct. 2069 (1999). To be sure, those cases contain statements suggesting that removal is proper if the defendant's relationship with the plaintiff is derived solely from the defendant's official federal duties. For example, *Willingham* ruled:

> In a civil suit of this nature, we think it was sufficient for petitioners to have shown that their relationship to respondent derived solely from their official duties . . . In this case, once petitioners had shown that their only contact with respondent occurred inside the penitentiary, while they were performing their duties, we believe that they had demonstrated the required 'causal connection.'

*Willingham*, 395 U.S. at 409; 89 S. Ct. at 1817 (footnote omitted). Further, in *Zeringue*, this court quoted *Willingham*, noting that "'it [is] *sufficient*' for a federal officer in a civil suit to establish the requisite causal connection by showing that the officer's 'relationship to [the plaintiff] derived solely from [the

officer's] official duties.'"  *Zeringue*, 846 F.3d at 793 (quoting *Willingham*, 395 U.S. at 409, 89 S. Ct. at 1817) (alterations and emphasis in *Zeringue*). Indeed, the *Zeringue* court reasoned pursuant to this rule that the defendant had met the causal nexus requirement because its "relationship with [the plaintiff] derives solely from its official authority to provide parts to the Navy, and that official authority *relates to* [the defendant's] allegedly improper actions, namely its use of asbestos."  *Zeringue*, 846 F.3d at 793-94 (emphasis in original).

Whatever force could be derived from these statements in *Zeringue*, however, was weakened by its assurance that "[o]ur recent holding in *Bartel* . . . is not to the contrary."  *Id.* at 794.  *Zeringue* continued that in *Bartel*, the charged conduct of failure to warn of the dangers of asbestos "was private conduct that implicated no federal interest.  Because the very purpose of the causal nexus requirement is to ensure that removal only arises when a federal interest in the matter exists, an extension of § 1442 to allow those defendants to remove would have stretched the causal nexus requirement to the point of irrelevance."  *Id.* at 794 (quotation marks omitted).  One year later, *Legendre* quoted *Zeringue* for these same propositions.  *Legendre*, 885 F.3d at 402. *Legendre* added, "[i]mportantly, in *Zeringue* we explicitly reaffirmed *Bartel*. We described the charged conduct in *Bartel* as failing to warn, train, and adopt safety procedures regarding asbestos.  These actions we explained, were private conduct that implicated no federal interests."  *Id.* at 402 (citations and quotation marks omitted).  Accordingly, the *Bartel* defendants did not meet the causal nexus requirement.  *Id.*

Because Latiolais's claims are the same failure to warn claims that both *Zeringue* and *Legendre* held implicated no federal interests, we cannot hold that this case meets the causal nexus requirement.

No. 18-30652

## III. The rule of orderliness and need to reconsider *Bartel* en banc

Avondale argues that *Legendre* misapplied the rule of orderliness vis-a-vis *Bartel* and that *Bartel* should not control this case "because it did not meaningfully consider or address the effect of the 2011 amendment." *Legendre* explained that, "[t]his court adheres to a rule of orderliness, under which a panel may not overturn a controlling precedent absent an intervening change in law, such as by a statutory amendment, or the Supreme Court, or our en banc court." *Legendre*, 885 F.3d at 403 (quotation marks omitted). "The 2011 amendment was, of course, not 'intervening'; *Bartel* was decided after the change and quoted the new 'relating to' language. *Bartel*'s articulation of the causal nexus standard, and its requirement that the claimed negligence conflict with a federal directive, was integral to the result. We are therefore bound by the *Bartel* standard." *Id.* Avondale cites no case in which this court bypassed the rule of orderliness because a later panel found unconvincing the earlier panel's statutory interpretation. This appeal is accordingly governed by *Bartel* and *Legendre*.

Nevertheless, *Bartel* should be reconsidered en banc in order to align our precedent with the statute's evolution. As discussed above, "[b]efore 2011, § 1442 allowed the removal of a state suit against a federal officer, or person acting under a federal officer, only when the state suit was 'for any act under color of such office.'" *Zeringue*, 846 F.3d at 793. In 2011, however, Congress amended the statute "to allow the removal of a state suit 'for *or relating to* any act under color of such office.'" *Id.* Thus, Congress specifically added the words "relating to" into § 1442. Those words have meaning, and the meaning is plainly broader than that of the predecessor provision.

*Bartel*'s causal nexus standard simply does not give effect to the words "relating to." This case exemplifies the problem. Avondale refurbished vessels using asbestos insulation as directed by the Navy. Because Avondale ran its

10

own safety department free of Navy directives, however, any alleged failure by Avondale to warn its employees or others about asbestos is not an act under color of federal office, so Avondale is not being sued "for" a federal act. However, Avondale's failure to warn about asbestos certainly "relates to" its federal act of building the ships. Applying the post-2011 statutory language would change the outcome of this appeal and would authorize removal of many more cases than the causal nexus test permits.

Finally, *Legendre* explained that "although we are bound by precedent, we note that other circuits have read the 2011 amendments to eliminate the old 'causal nexus' requirement." *Id.* at 403. The Third and Fourth Circuits shifted their jurisprudence away from the causal nexus test and now require only a "connection" or "association." Specifically, the Third Circuit, after discussing the addition of the phrase "relating to," held "it is sufficient for there to be a 'connection' or 'association' between the act in question and the federal office." *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Association of Philadelphia*, 790 F.3d 457, 471 (3d Cir. 2015). The Fourth Circuit agreed that the addition of "relating to" "broaden[ed] the universe of acts that enable federal removal such that there need only be a *connection or association* between the act in question and the federal office." *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017) (emphasis in original) (quotation marks and internal citation omitted).[5] Federal courts should be in harmony concerning the interpretation of statutes governing essential procedures like removal. This court is out of step with Congress and our sister circuits.

---

[5] The Eleventh Circuit has also considered the "relating to" language, but the court's position is less clear. *See Caver v. Central Alabama Electric Coop.*, 845 F.3d 1135, 1144-45 & n.8 (11th Cir. 2017) (citing the Third Circuit's "connection or association" language but applying a "causal connection" test).

No. 18-30652

## CONCLUSION

For the foregoing reasons, but in hopes that our precedents will be reordered, the remand order of the district court must be **AFFIRMED**.

No. 18-30652

HAYNES, Circuit Judge, dissenting:

I respectfully dissent from the court's decision to extend *Bartel v. Alcoa Steamship Co.*, 805 F.3d 169 (5th Cir. 2015), to the facts of this case. I agree that we are bound by the legal standard that *Bartel* and progeny established. But even under that standard, Avondale should prevail on the jurisdictional issue.

The core fact that distinguishes this case from *Bartel* is that Latiolais was a member of the Navy. He was subject to Avondale's actions exclusively because the Navy assigned him to the *USS TAPPAHANNOCK*. The Navy alone, not Avondale, could control Latiolais's actions.

Our case law, including *Bartel*, has never addressed such a situation.[1] Though we are bound to apply the standard that *Bartel* uses—the causal nexus test—the result is not predetermined.

Latiolais's status as a Navy man and Avondale's status as a contractor for the Navy satisfies the causal nexus test. The Supreme Court has held that the causal nexus test is satisfied when defendants "have shown that their relationship to [a plaintiff] derived solely from their official duties." *Willingham v. Morgan*, 395 U.S. 402, 409 (1969). Latiolais had no relationship with Avondale other than through its contract to refurbish the *USS TAPPAHANNOCK*. Their relationship is therefore "derived solely" from Avondale's official duties.

The majority opinion seems to agree with this point, noting that *Willingham* "suggest[s] that removal is proper" based on that test, but it reasons that our decision in *Zeringue v. Crane Co.*, 846 F.3d 785 (5th Cir. 2017), forbids it. *Zeringue* does not prohibit removal. *Zeringue* does say that

---

[1] Because this case differs significantly from the *Bartel* line of cases, it is not a good vehicle to take the underlying issue en banc even assuming arguendo that the *Bartel* line of cases are wrong.

13

negligence claims like those in *Bartel* involve "private conduct that implicated no federal interest." *Zeringue*, 846 F.3d at 794. But that statement must be read in light of the facts of *Bartel*, which involved an employee of a private, federal contractor suing the contractor. There, the relationship involves private conduct because it centers on a private contractor directing the work of its private employees—a relationship that would exist independent of federal involvement. But here, the relationship is not wholly private. Both Avondale and Latiolais were at the ship at the direction of the federal government and neither could control the other's behavior. The treatment of federal workers by a contractor for the federal government implicates a "federal interest." *Id.*

Other circuits have reached the same result based on nearly identical facts. *See Ruppel v. CBS Corp.*, 701 F.3d 1176, 1179, 1181 (7th Cir. 2012) (concluding that a Navy man satisfied the causal nexus test against for his negligence claim against contractor that "manufactured, sold, distributed, or installed" turbines with asbestos under the direction of the navy); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1088, 1091 (6th Cir. 2010) (concluding the causal nexus test was satisfied for FAA employees against a company that remediated mold at their work site). I would follow these cases and conclude that the district court had jurisdiction; therefore, I respectfully dissent.