# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-30957

United States Court of Appeals
Fifth Circuit

**FILED**
August 15, 2019

Lyle W. Cayce
Clerk

ST. CHARLES SURGICAL HOSPITAL, L.L.C.,

> Plaintiff - Appellee

v.

LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY, doing business as Blue Cross/Blue Shield of Louisiana; BLUE CROSS & BLUE SHIELD OF LOUISIANA, INCORPORATED,

> Defendants - Appellants

Appeal from the United States District Court
for the Eastern District of Louisiana

Before HAYNES, GRAVES, and HO, Circuit Judges.

JAMES C. HO, Circuit Judge:

Blue Cross seeks removal to federal court under the federal officer removal statute, 28 U.S.C. § 1442, on the ground that it is sued here in its capacity as an administrator of health care benefits for federal employees. Three of our sister circuits have allowed removal under such circumstances. *See Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1247 (9th Cir. 2017); *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1235 (8th Cir. 2012); *Anesthesiology Assocs. of Tallahassee v. Blue Cross Blue Shield of Fla., Inc.*, 2005 WL 6717869, at *2 (11th Cir. 2005). We join our sister

No. 18-30957

circuits in allowing Blue Cross to remove, and accordingly reverse the district court's judgment to the contrary.

I.

St. Charles Surgical Hospital, L.L.C. sued Louisiana Health Service & Indemnity Company, d/b/a Blue Cross/Blue Shield of Louisiana and Blue Cross & Blue Shield of Louisiana, Inc. in Louisiana state court for violating Louisiana law. Under Louisiana law, when an insurance company has notice that a patient has assigned benefits to a hospital, the insurance company is required to pay the hospital, rather than the patient. *See* La. R.S. § 40:2010. St. Charles alleged that Blue Cross violated the Louisiana assignment statute by paying benefits directly to patients rather than to St. Charles, despite the fact that Blue Cross had notice that the patients had assigned those benefits to the hospital.

Blue Cross removed the case to federal court based on the federal officer removal statute. 28 U.S.C. § 1442(a)(1). St. Charles moved to remand and also sought attorney's fees. The district court granted both motions. Blue Cross appealed.

II.

We review a district court's remand order de novo. *See Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1117 (5th Cir. 1998).

The federal officer removal statute allows a defendant to remove a state court action to federal court, if the state court action was brought against:

> The United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1) (emphasis added).

2

No. 18-30957

To claim removal as a "person acting under" an officer of the United States, a party must show (1) that he is a person within the meaning of the statute; (2) that he acted under the direction of a federal officer; (3) that a causal nexus exists between his actions under color of federal office and the plaintiff's claims; and (4) that he has a colorable federal defense. *See Bartel v. Alcoa S.S. Co., Inc.*, 805 F.3d 169, 172 (5th Cir. 2015) (citing authorities).

St. Charles agrees that Blue Cross has satisfied the first condition of removal—that Blue Cross is a "person" under the federal officer removal statute—but contests the remaining three conditions. We address each in turn, and ultimately conclude that Blue Cross has satisfied all conditions for removal as a person acting under an officer of the United States.

A.

To remove this action to federal court, Blue Cross must show, *inter alia*, that it "acted under the direction of a federal officer" when it paid the patients directly, rather than the hospital, notwithstanding its awareness of the patients' assignment of benefits to the hospital.

"[T]he word 'under' must refer to what has been described as a relationship that involves 'acting in a certain capacity, considered in relation to one holding a superior position or office.'" *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 151 (2007) (quoting 18 OXFORD ENGLISH DICTIONARY 948 (2d ed. 1989)). "This relationship typically involves 'subjection, guidance, or control.'" *Zeringue v. Crane Co.*, 846 F.3d 785, 793 (5th Cir. 2017) (citing *Watson*, 551 U.S. at 151). "[T]he private person's 'acting under' must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 153 (citing *Davis v. South Carolina*, 107 U.S. 597, 600 (1883)).

Here, the relevant federal superior is the Office of Personnel Management. So we must determine whether OPM officials exert a sufficient level of subjection, guidance, or control over Blue Cross to satisfy the "acting

under" requirement of the federal officer removal statute. To do so, we must first understand OPM's role in providing health care to federal employees.

Congress established a health insurance program for federal employees through the Federal Employees Health Benefits Act. 5 U.S.C. § 8901 *et seq*. Under the FEHBA, OPM is responsible for contracting with private insurance carriers to provide health benefits plans to federal employees. *See Houston Cmty. Hosp. v. Blue Cross and Blue Shield of Tex., Inc.*, 481 F.3d 265, 267 (5th Cir. 2007). Those contracts must contain a statement of benefits (known as the "Brochure") that the carrier must provide. *See* 5 U.S.C. § 8902(d) ("Each contract under this chapter shall contain a detailed statement of benefits offered and shall include such maximums, limitations, exclusions, and other definitions of benefits as [OPM] considers necessary or desirable.").

Pursuant to the FEHBA, OPM contracted with Blue Cross to provide health benefits to federal employees. *See Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 684 (2006). Under OPM's plan with Blue Cross, the federal government pays 75% of the insurance premiums, and the employee pays the remainder. *Id.* (citing 5 U.S.C. § 8906(b)). The premiums are deposited into a fund held by the U.S. Treasury, and Blue Cross draws from the fund to pay for covered benefits. *Id.* (citing 5 U.S.C. § 8909(a); 48 C.F.R § 1632.170(b)). The funds are not owned by Blue Cross—OPM owns the funds, and OPM decides how to use any excess monies. *Id.* Blue Cross never takes on the risks of an insurer in its relationship with OPM. It operates instead as a claims processor, rather than an insurer. In the event of a dispute between a patient and Blue Cross over coverage, OPM resolves the issue. *See* 5 C.F.R. § 890.105(a).

Based on the structure of the relationship between OPM and Blue Cross, we conclude that that OPM enjoys a strong level of guidance and control over Blue Cross. As our sister circuits have noted, "[a]t all times, the carrier is

No. 18-30957

subject to OPM oversight, uniquely operates with the United States Treasury, submits to OPM's regulatory requirements, and ultimately answers to federal officers." *Jacks*, 701 F.3d at 1234 (citing *Anesthesiology Assocs. of Tallahassee*, 2005 WL 6717869, at *2). Therefore, we conclude that Blue Cross has satisfied the "acting under" requirement of the federal officer removal statute.

## B.

Next, Blue Cross must show a "causal nexus" between its actions under color of federal office and the plaintiff's claims.

We analyzed the causal nexus requirement in *Bartel*. 805 F.3d at 174. Plaintiffs there claimed they suffered asbestos-related injuries due to a shipping company's failure to warn them about asbestos on naval ships. *Id.* at 171. The shipping company sought removal to federal court. The company argued that its contract with the federal government to operate ships owned by the U.S. Navy was a sufficient causal nexus under the federal officer removal statute. *Id.* at 172. We disagreed because no federal officer or agency prohibited the shipping company from warning the employees about the asbestos. *See id.* at 174 ("There is no evidence that the government ever issued orders of any kind, let alone orders relating to safety procedures or asbestos. . . . [The defendants] operated the vessels in a largely independent fashion and, at a minimum, were free to adopt the safety measures the plaintiffs now allege would have prevented their injuries."). Therefore, we concluded that the defendant had not met the causal nexus requirement.

Applying *Bartel* here, we ask whether any federal directive prevented Blue Cross from paying the hospital instead of the patients. Blue Cross points to language in the Brochure that specifies how it must direct payments. According to the Brochure, Blue Cross pays PPO providers and participating providers directly. For non-participating providers like St. Charles, however, Blue Cross must pay the patient directly.

5

No. 18-30957

Based on the language of the Brochure, we conclude that Blue Cross has shown that it was prevented by federal directive from paying St. Charles directly. As a result, Blue Cross has shown a casual nexus.[1]

C.

Finally, Blue Cross must show that it has a colorable federal defense to St. Charles' claim.

"[N]either we nor the Supreme Court has defined 'colorable' in the context of § 1442." *Zeringue*, 846 F.3d at 790. But we have made clear that a defendant's federal defense need not prevail at the merits stage to warrant removal—it need only be material and non-frivolous. *See id.* Blue Cross has asserted three possible federal defenses, and only one needs to be colorable for Blue Cross to succeed on this factor.

Among the federal defenses asserted by Blue Cross is preemption. The FEHBA "contains a preemption clause . . . displacing state law on issues relating to 'coverage or benefits' afforded by health-care plans." *Empire*, 547 U.S. at 683. The preemption clause states:

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (*including payments with respect to benefits*) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.

---

[1] We recently granted rehearing in a case that challenges the causal nexus requirement, arguing that we should adopt the "broader" test employed by our sister circuits. *See Latiolais v. Huntington Ingalls, Inc.*, 918 F.3d 406, 412–13 (5th Cir. 2019), *reh'g en banc granted*, 923 F.3d 427 (5th Cir. 2019). Following the 2011 amendments to the federal officer removal statute, "[t]he Third and Fourth Circuits shifted their jurisprudence away from the causal nexus test and now require only a 'connection' or 'association' . . . between the act in question and the federal office." *Id.* (citing *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Philadelphia*, 790 F.3d 457, 471 (3d Cir. 2015); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017)). As discussed above, we conclude that Blue Cross satisfies the narrower causal nexus test. Accordingly, we see no reason to hold this case in abeyance pending en banc rehearing in *Latiolais*.

No. 18-30957

5 U.S.C. § 8902(m)(1) (emphasis added).

The payment directives set out here in the Brochure "relate to . . . payments with respect to benefits." *Id.* Therefore, we conclude that Blue Cross' preemption defense is non-frivolous and sufficient for purposes of the federal officer removal statute.

\* \* \*

We reverse both the district court's remand of the case to state court and the district court's award of attorney's fees.[2]

---

[2] Blue Cross properly removed the case to federal court. Accordingly, Blue Cross certainly had an "objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). We therefore hold that the district court abused its discretion when it awarded attorney's fees to St. Charles.