# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 13, 2023

Lyle W. Cayce
Clerk

No. 22-10062

Roslyn Gonzalez, *individually and on behalf of all others similarly situated*,

*Plaintiff—Appellant*,

*versus*

Blue Cross Blue Shield Association; Health Care Services Corporation, *doing business as* Blue Cross Blue Shield of Texas; United States Office of Personnel Management,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:20-CV-2149

Before Graves, Willett, and Engelhardt, *Circuit Judges*.
Don R. Willett, *Circuit Judge*:

Roslyn Gonzalez is a former federal employee and participant in a health-insurance plan ("Plan") that is governed by the Federal Employees Health Benefits Act ("FEHBA").[1] The Plan stems from a contract between

---

[1] 5 U.S.C. §§ 8901–8914.

the federal Office of Personnel Management ("OPM") and Blue Cross Blue Shield Association and certain of its affiliates (together, "Blue Cross"). Blue Cross administers the Plan under OPM's supervision.

Gonzalez suffered from cancer, and she asked Blue Cross whether the Plan would cover the proton therapy that her physicians recommended. Blue Cross told her the Plan did not cover that treatment. So Gonzalez chose to receive a different type of radiation treatment, one that the Plan did cover.

The second-choice treatment eliminated the cancer, but it also caused devastating side effects. Gonzalez then sued OPM and Blue Cross, claiming that the Plan actually *does* cover proton therapy. As against OPM, she seeks the "benefits" that she wanted but did not receive, as well as an injunction directing OPM to compel Blue Cross to reform its internal processes by, among other things, covering proton therapy in the Plan going forward. As against Blue Cross, she seeks monetary damages under Texas common law.

The district court dismissed Gonzalez's suit. It concluded that sovereign immunity bars Gonzalez's monetary claims against OPM, that Gonzalez lacks standing for injunctive relief, and that FEHBA expressly preempts Gonzalez's state-law claims against Blue Cross. Our reasoning follows a different path, but we AFFIRM the district court's judgment.

I

A

"The Federal Employees Health Benefits Act of 1959[] establishes a comprehensive program of health insurance for federal employees."[2] "FEHBA assigns to OPM responsibility for negotiating and regulating

---

[2] *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 682 (2006) (citations omitted) (internal abbreviations omitted).

No. 22-10062

health-benefits plans for federal employees."[3] OPM carries out that duty by agreeing to contracts with private insurers like Blue Cross, who then act as "carriers"[4] to "provide health benefits to federal employees."[5] As a carrier, "Blue Cross never takes on the risks of an insurer in its relationship with OPM. It operates instead as a claims processor, rather than an insurer."[6]

OPM has the first and last word on the health benefits that an employee may receive under the Plan. First, OPM's contract with Blue Cross describes the benefits that employees are eligible for, and on what terms. That contract requires Blue Cross to furnish each enrolled employee with a detailed Statement of Benefits (the contract also incorporates that document).[7] Blue Cross must provide the benefits that OPM requires, and it cannot modify or misrepresent those benefits. OPM has the last word, too, because Blue Cross must honor any case-by-case determinations that OPM makes for an individual employee.[8]

"In the event of a dispute between a patient and Blue Cross over coverage, OPM resolves the issue."[9] Here's how. The patient begins the process by submitting a claim to Blue Cross.[10] If Blue Cross denies the claim,

---

[3] *Id.* at 684; *see* 5 U.S.C. § 8902.

[4] 5 U.S.C. § 8901(7).

[5] *St. Charles Surgical Hosp., LLC v. La. Health Serv. & Indem. Co.*, 935 F.3d 352, 356 (5th Cir. 2019) (citations omitted).

[6] *Id.*

[7] 5 U.S.C. § 8902(d).

[8] 5 U.S.C. § 8902(j).

[9] *St. Charles*, 935 F.3d at 356; *see* 5 C.F.R. § 890.105(a)(1).

[10] 5 C.F.R. § 890.105(a)(1).

the patient can ask Blue Cross to reconsider.[11] If Blue Cross affirms the denial, then the patient can ask for OPM's review.[12] If OPM also denies the claim, then the patient can then seek judicial review of OPM's denial.[13]

OPM's regulations require a patient to "exhaust both the carrier and OPM review processes . . . before seeking judicial review."[14] The regulations also say that a patient who wishes to challenge a denial may sue only OPM, not Blue Cross.[15] "The recovery in such a suit shall be limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute."[16] The Plan documents describe all of these procedures.

B

Roslyn Gonzalez is a former federal employee and participant in the Plan.[17] In 2019, she was diagnosed with a malignant tumor in her lower abdomen. Her healthcare provider, the MD Anderson Cancer Center, determined that radiation treatment was necessary. Given the tumor's location and severity, as well as Gonzalez's medical history, MD Anderson recommended a special, more expensive type of radiation therapy called proton beam therapy.

Blue Cross allows providers and claimants to ask about coverage using a process that it calls "advance benefit determination." This process lets

---

[11] *Id.*

[12] *Id.*

[13] *Id.* § 890.107(c).

[14] *Id.* § 890.105(a)(1); *id.* § 890.107(d)(1).

[15] *Id.* § 890.107(c).

[16] *Id.*

[17] In this appeal from a motion to dismiss, we draw the facts from Gonzalez's operative complaint. *See Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020).

patients and providers seek Blue Cross's *pre*-treatment approval for a procedure that the Plan will cover (if at all) only after the patient submits a *post*-treatment claim to Blue Cross. This process is not part of Blue Cross's contract with OPM, and it does not appear in the Plan, the Statement of Benefits, or in any other Plan materials that Gonzalez received.

MD Anderson submitted an advance request explaining that proton therapy treatment was medically necessary to treat Gonzalez's cancer. Blue Cross responded with a letter titled "Advance Benefit Determination – DENIAL." That letter contained a "review of benefit coverage" and told Gonzalez that "we are unable to approve your request." It also "denied" the specific proton therapy that MD Anderson's request described. The Plan covered "chemotherapy and radiation therapy," and it did not specifically exclude proton therapy from coverage, but it also contained an exception for "[e]xperimental or investigational" treatments. The letter explained that Blue Cross classified proton therapy as an investigational procedure. That classification relied on an internal Blue Cross document that was also not part of the Plan.

MD Anderson appealed the decision, but Blue Cross doubled-down. Two days after its "initial denial of coverage," Blue Cross sent a letter that stated flatly: "[y]our claim is denied." And about a month later, Blue Cross *tripled*-down, again sending a letter telling Gonzalez it had "reviewed our initial denial of coverage" but would "uphold the previous denial." Blue Cross also told Gonzalez that she had "exhausted" her claim. Blue Cross's first denial letter explained that the denial "is not covered by the reconsideration and appeals process outlined in [the Plan documents]" and that "[o]ur decision is not subject to [OPM] appeal rights." The second letter reiterated that "[t]his advance benefit decision is not subject to the disputed claims process. [OPM] appeal rights do not apply." The third letter

No. 22-10062

summed up in plain English: "Additional appeal rights have been exhausted."

At no point did Blue Cross explain that the advance process was only preliminary, or that Gonzalez could undergo proton therapy at her own expense and then submit a claim for reimbursement, or that Blue Cross's decision did not bind OPM. Instead, Blue Cross told Gonzalez that her "claim" was "denied" and that her "remedies" were "exhausted."

Because she needed radiation treatment but could not afford proton therapy, Gonzalez had "no choice" but to undergo a different type of treatment called intensity-modulated radiation therapy (which her Plan unquestionably covered). Gonzalez is now cancer-free, but she also suffers from severe side effects. And on top of all that, Gonzalez says, it turns out that proton therapy is neither experimental nor investigational. Rather, Gonzalez argues that the medical community has long recognized proton therapy as an appropriate treatment for cancer.

C

Gonzalez sued OPM and Blue Cross on her own behalf and on behalf of a putative class of federal employees to whom Blue Cross denied proton therapy. Her operative complaint asserts eight theories of liability against the two defendants, all arising from (1) Blue Cross's denial of coverage and (2) Blue Cross's reliance on the "advance benefit determination" process that purported to bar OPM review.

Count 1 is a FEHBA benefits claim that seeks an order compelling OPM to direct Blue Cross to pay Gonzalez "the amount of benefits due for the wrongful denial of covered [proton therapy]."[18] Count 2, under the

---

[18] *See* 5 C.F.R. § 890.107 (authorizing a cause of action "against OPM").

No. 22-10062

Administrative Procedure Act, seeks an injunction requiring OPM to compel Blue Cross to: end the "advance benefit determination" process; stop classifying proton therapy as experimental; identify benefit funds belonging to employees who should have received proton therapy; ensure that those funds are not wrongfully directed to another purpose; and re-adjudicate all prior proton-therapy denials under the Plan.

Counts 3–8 are Texas common-law claims against Blue Cross. They focus on Blue Cross's "advance benefit determination" process and on Blue Cross's decision to deny coverage for proton therapy. These six claims are for third-party breach of contract, breach of contract, tortious interference with an employment contract, intentional infliction of emotional distress, fraud, and negligent misrepresentation.

The district court granted each defendant's motion to dismiss. Citing Rule 12(b)(1), that court held that sovereign immunity bars Gonzalez's benefits claim (Count 1), and that Gonzalez lacks standing for injunctive relief (Count 2). And citing Rule 12(b)(6), it held that FEHBA expressly preempts Gonzalez's claims against Blue Cross (Counts 3–8). Because the district court dismissed the complaint, it did not address class certification.[19]

Gonzalez timely appealed both dismissals.

## II

We review the district court's dismissals under Rules 12(b)(1) and 12(b)(6) de novo, taking all well-pleaded factual allegations in the complaint

---

[19] *Gonzalez v. Blue Cross & Blue Shield Ass'n*, No. 3:20-CV-2149-B, 2021 WL 5882825 (N.D. Tex. Dec. 13, 2021).

as true, and viewing them in the light most favorable to the plaintiff.[20] We may affirm the district court's dismissal on any ground the record supports.[21]

## III

We begin with Gonzalez's benefits and injunctive claims against OPM. We affirm dismissal as to Count 1 because FEHBA does not recognize the "benefits" that Gonzalez seeks to recover, and we affirm as to Count 2 because Gonzalez lacks Article III standing to seek injunctive relief.

## A

Count 1 seeks monetary relief from OPM, under FEHBA, in the amount of the "benefits" Gonzalez argues that the Plan entitles her to. The district court dismissed this claim on grounds of federal sovereign immunity. We conclude that sovereign immunity does not bar Gonzalez's suit, but we affirm dismissal on the alternative ground that Gonzalez has failed to state a claim under Rule 12(b)(6).

## 1

"[T]he United States may not be sued except to the extent that it has consented to suit by statute. Further, where the United States has not consented to suit or the plaintiff has not met the terms of the statute the court lacks jurisdiction and the action must be dismissed."[22] As relevant here, "[t]he district courts of the United States have original jurisdiction . . . of a civil action or claim against the United States founded on [5 U.S.C. §§ 8901–

---

[20] *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

[21] *Walmart Inc. v. U.S. Dep't of Just.*, 21 F.4th 300, 307 (5th Cir. 2021).

[22] *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 488 (5th Cir. 2014) (internal quotation marks and citations omitted).

No. 22-10062

14, that is, FEHBA]."[23] The government has thus "consented to suits to vindicate rights or enforce obligations created by [FEHBA]."[24]

In contrast to that broad waiver, OPM has promulgated a regulation that says:

> A covered individual may seek judicial review of OPM's final action on the denial of a *health benefits claim*. A legal action to review final action by OPM involving such denial of health benefits must be brought against OPM and not against the carrier or carrier's subcontractors. The recovery in such a suit shall be limited to a court order directing OPM to require the carrier to pay the *amount of benefits in dispute*.[25]

OPM argues that this *regulation* states the full extent of Congress's waiver of sovereign immunity. So, OPM says, immunity bars Gonzalez from seeking anything beyond a court order directing OPM to require Blue Cross to pay the "amount of benefits in dispute."

OPM erroneously assumes that it can use a regulation to narrow or retract a statutory waiver of immunity. On the contrary, just as "only Congress can waive an agency's sovereign immunity,"[26] so too only Congress can withdraw or modify a waiver of immunity.[27] This is because

---

[23] 5 U.S.C. § 8912.

[24] *Nat'l Treas. Emps. Union v. Campbell*, 589 F.2d 669, 674 (D.C. Cir. 1978); *see also Empire Healthchoice*, 547 U.S. at 696 ("FEHBA's jurisdictional provision, 5 U.S.C. § 8912, opens the federal district-court door to civil actions 'against the United States.'").

[25] 5 C.F.R. § 890.107(c) (emphases added).

[26] *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 664 (5th Cir. 2007).

[27] *See Lynch v. United States*, 292 U.S. 571, 581 (1934) ("Although consent to sue was thus given when the policy issued, *Congress* retained power to withdraw the consent at any time." (emphasis added)); *Becker Steel Co. of Am. v. Cummings*, 296 U.S. 74, 80 (1935) ("Only compelling language in the *congressional enactment* will be construed as withdrawing or curtailing the privilege of suit against the government granted in recognition of an

No. 22-10062

"[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in *statutory* text and will not be implied."[28] An agency cannot waive the federal government's immunity when Congress hasn't.[29] For the same reason, an agency's regulation cannot narrow, rescind, withdraw, retract, or otherwise modify Congress's statutory waiver. Section 8912 waives federal sovereign immunity in federal court for "a civil action or claim against the United States founded on [FEHBA]."[30] Sovereign immunity, therefore, does not bar Gonzalez's FEHBA claim.

Although the Tenth Circuit reached the opposite conclusion in *Bryan v. OPM*, our sister circuit did so based on a mistaken premise.[31] In *Bryan*, the court relied on OPM's regulations to conclude that "Congress clearly intended a limited waiver of sovereign immunity in [FEHBA] disputes."[32] Congress, however, enacted § 8912—not § 890.107(c). An agency's regulation, just like "[a] statute's legislative history[,] cannot supply a waiver that does not appear clearly in any statutory text."[33] As one district court aptly put it, "[OPM's] regulatory scheme reflects OPM's choices, not

---

obligation imposed by the Constitution." (emphasis added)); *Juda v. United States*, 13 Cl. Ct. 667, 689 (1987) ("An unbroken line of decisions holds that *Congress* may withdraw its consent to sue the Government at any time." (emphasis added) (collecting cases)).

[28] *Lane v. Pena*, 518 U.S. 187, 192 (1996) (emphasis added); *see also F.A.A. v. Cooper*, 566 U.S. 284, 290 (2012) (same).

[29] *See United States v. Mitchell*, 463 U.S. 206, 215–16 (1983) ("[N]o contracting officer or other official is empowered to consent to suit against the United States. The same is true for claims founded upon executive regulations." (footnote omitted)); *see also*, *e.g., Charles v. McHugh*, 613 F. App'x 330, 335 (5th Cir. 2015) ("EEOC does not have the authority to waive sovereign immunity through its regulations.").

[30] 5 U.S.C. § 8912.

[31] 165 F.3d 1315, 1318 (10th Cir. 1999).

[32] *Id.* (citing 5 C.F.R. § 890.107(c)).

[33] *Lane*, 518 U.S. at 192.

necessarily a manifestation of congressional intent."[34] We therefore disagree with *Bryan*, and we do not follow it here.

In sum, because § 8912 waives immunity, the district court erred by concluding that sovereign immunity bars Gonzalez's FEHBA claim.

2

OPM next argues that Gonzalez failed to exhaust her remedies, and that this failure is an alternative ground for affirming. Blue Cross's repeated assurances that Gonzalez's claims were both denied and exhausted leave us skeptical that OPM can rely on exhaustion here.[35] But because regulatory exhaustion requirements are not jurisdictional, we need not decide this issue.

There are two types of exhaustion requirements: jurisdictional and jurisprudential.[36] When "Congress statutorily mandates that a claimant exhaust administrative remedies, the exhaustion requirement is jurisdictional."[37] But when an exhaustion requirement appears only in a regulation, "the jurisprudential doctrine of exhaustion controls."[38] The jurisprudential doctrine involves discretion, not jurisdiction.[39] Here, OPM

---

[34] *Smith v. OPM*, 80 F. Supp. 3d 575, 586 (E.D. Pa. 2014).

[35] *See, e.g.*, *United States v. Henderson*, 707 F.2d 853, 856 (5th Cir. 1983) ("While we agree that the United States was under no obligation to provide appellant with its interpretation of the applicable statutory provisions, the government nonetheless *may not affirmatively misrepresent* the obligations of a debtor." (emphasis added)).

[36] *Williams v. J.B. Hunt Transp., Inc.*, 826 F.3d 806, 810 (5th Cir. 2016).

[37] *Taylor v. U.S. Treasury Dep't*, 127 F.3d 470, 475 (5th Cir. 1997).

[38] *Williams*, 826 F.3d at 810 (quoting *Taylor*, 127 F.3d at 475); *see Kobleur v. Group Hospitalization & Med. Services, Inc.*, 954 F.2d 705, 711 (11th Cir. 1992) ("But when, as in this [FEHBA] case, the exhaustion requirement is created by agency regulations, the decision whether to require exhaustion is a matter for district court discretion.").

[39] *See Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 602 (5th Cir. 2007).

relies on a regulatory exhaustion requirement.[40] Because that requirement is not jurisdictional, we have discretion to decide this appeal on another basis. In the next section, we do just that.

3

With our jurisdiction secure, and with Gonzalez's Count 1 claim for benefits properly before us on the merits, we "may affirm dismissal for any reason supported by the record."[41] OPM argues that we should affirm dismissal because Gonzalez "fail[ed] to state a claim upon which relief can be granted."[42] We agree that Rule 12(b)(6) supports dismissal.

OPM has statutory authority to "prescribe regulations necessary to carry out [FEHBA]."[43] OPM's regulations allow a patient to "seek judicial review of OPM's final action on the denial of a *health benefits claim*."[44] The regulations also say that "recovery in such a suit shall be limited to a court order directing OPM to require the carrier to pay the *amount of benefits in dispute*."[45] Gonzalez's Count 1 thus cannot survive unless she has identified a benefits claim for which there is some "amount of benefits in dispute."[46]

The statutory and regulatory definitions do not have any entry for "benefits in dispute,"[47] but that term's meaning is still plain as relevant here.

---

[40] *See* 5 C.F.R. § 890.107(d)(1).

[41] *Walmart*, 21 F.4th at 307.

[42] Fed. R. Civ. P. 12(b)(6).

[43] 5 U.S.C. § 8913.

[44] 5 C.F.R. § 890.107(c) (emphasis added).

[45] *Id.* (emphasis added). Because Gonzalez and OPM seemingly agree that the regulation itself is lawful, we express no view on that issue.

[46] *Id.*

[47] *See* 5 U.S.C. § 8901; 5 C.F.R. § 890.101.

No. 22-10062

Benefits cannot be "in dispute" during judicial review unless they are part of the "health benefits *claim*" that opens the door to judicial review.[48] OPM's regulations define "claim" as "a request for (i) payment of a health-related bill[] or (ii) provision of a health-related service or supply."[49] Gonzalez has not identified any "bill" that Blue Cross denied—not for the proton therapy that she wanted, and not for the intensity-modulated radiation therapy that she received. And because Gonzalez is presently "cancer-free," she also is not seeking to undergo proton therapy or any other radiation treatment as a "service."[50]

Gonzalez thus has not identified any "payment of a . . . bill" or any "provision of a . . . service" that is "in dispute" in this case.[51] Instead, she seeks to blend those categories by seeking *payment* for a *service* that she never received. No matter how she describes the service—whether proton therapy itself, access to coverage, or access to administrative process—OPM's regulations do not authorize judicial review for such a hybrid "benefit." We therefore affirm dismissal as to Count 1 for failure to state a claim.

B

Gonzalez's second count seeks injunctive relief under the Administrative Procedure Act. The APA waives sovereign immunity for suits that seek non-monetary relief against federal agencies such as OPM.[52] Gonzalez asks for an order compelling OPM to direct Blue Cross to stop using the "advance benefit determination" process and to amend its internal

---

[48] 5 C.F.R. § 890.107(c) (emphasis added).

[49] 5 C.F.R. § 890.101.

[50] *See id.*

[51] *Id.*; 5 C.F.R. § 890.107(c).

[52] *Cambranis v. Blinken*, 994 F.3d 457, 462 (5th Cir. 2021) (citing 5 U.S.C. § 702).

policies to cover proton therapy going forward.[53] We conclude that the district court correctly dismissed Gonzalez's injunctive request for lack of Article III standing.

"To have standing to sue for injunctive relief, a party must: (1) have suffered an injury-in-fact; (2) establish a causal connection between the injury-in-fact and a complained-against defendant's conduct; (3) show that it is likely, not merely speculative, that a favorable decision will redress the injury-in-fact; and (4) demonstrate either continuing harm or a real and immediate threat of repeated injury in the future."[54] As the party invoking federal jurisdiction, Gonzalez "bears the burden of establishing these elements" of standing.[55]

Because the fourth element is lacking here, so is jurisdiction.[56]

Gonzalez does not allege that she is currently involved in the advance process, so that process is not responsible for a "continuing harm."[57] And because Gonzalez does not allege that Blue Cross will *require* her to use the advance process again, she has not shown how that process creates a threat of "repeated injury."[58] On the contrary, OPM and Blue Cross have

---

[53] Gonzalez also seeks injunctive relief that appears targeted to assist her in recovering the monetary amounts that she seeks for herself and the putative class as part of Count 1. We have concluded that the district court properly dismissed Count 1, *see supra* Part III.A, so we need not address Gonzalez's requests for injunctive relief related to that count.

[54] *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 342 (5th Cir. 2012) (internal quotation marks omitted).

[55] *Lujan v. Defenders. of Wildlife*, 504 U.S. 555, 561 (1992).

[56] *See Attala Cnty. NAACP v. Evans*, 37 F.4th 1038, 1042 (5th Cir. 2022).

[57] *Funeral Consumers All.*, 695 F.3d at 342; *Attala Cnty. NAACP*, 37 F.4th at 1042.

[58] *Id.*

confirmed that an advance determination is a "voluntary" process that an employee "can choose to request." So, while Gonzalez may *choose* to use the process again, "standing cannot be conferred by a self-inflicted injury."[59] Because Gonzalez is free to ignore the advance process, she does not face any continuing or threatened harm sufficient to create standing for injunctive relief.

Nor does Blue Cross's internal proton-therapy guideline pose an immediate threat of injury. This is because OPM has the final word regarding proton therapy—not Blue Cross.[60] At worst, then, Blue Cross's internal guideline threatens Gonzalez only to the extent that it might require her to seek OPM's review *if* her cancer goes into remission and *if* Blue Cross again denies coverage. But even if Gonzalez does end up seeking OPM's review for some future claim, she would not thereby suffer an injury under Article III. Nor would an injunction that eliminates *Blue Cross's* proton-therapy guideline prevent *OPM* from denying coverage for treatment. And to top it off, Gonzalez has not even alleged that OPM *would* deny coverage.

Neither the advance process nor the proton-therapy guideline poses an immediate threat of injury, so injunctive relief is therefore unavailable.

IV

We now turn to Gonzalez's state-law monetary claims against Blue Cross (that is, Counts 3–8). FEHBA contains a preemption clause that "displac[es] state law on issues relating to 'coverage or benefits.'"[61] The

---

[59] *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018).

[60] *See, e.g.*, 5 C.F.R. § 890.105(e)(2)(iv) (providing that, in reviewing a carrier's decision, OPM may "[m]ake its decision based solely on the information the covered individual provided with his or her request for review.").

[61] *Empire Healthchoice*, 547 U.S. at 683 (citing 5 U.S.C. § 8902(m)(1)).

No. 22-10062

district court correctly determined that this clause preempts Gonzalez's Texas common-law claims against Blue Cross. The preemption clause says:

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.[62]

The clause helps "[t]o ensure uniform coverage and benefits under plans OPM negotiates for federal employees."[63] The clause's language is "expansive," and the Supreme Court has "'repeatedly recognized' that the phrase 'relate to' in a preemption clause 'expresses a broad pre-emptive purpose.' Congress characteristically employs the phrase to reach any subject that has 'a connection with, or reference to,' the topics the statute enumerates."[64] Thus, "state law—whether consistent or inconsistent with federal plan provisions—is displaced on matters of 'coverage or benefits.'"[65]

"[P]reemption occurs under FEHBA when (1) the FEHBA contract terms at issue relate to the nature, provision, or extent of coverage or benefits, and (2) the state law relates to health insurance or plans."[66] Gonzalez's claims against Blue Cross meet both prongs of this test.

---

[62] 5 U.S.C. § 8902(m)(1).

[63] *Empire Healthchoice*, 547 U.S. at 686.

[64] *Coventry Health Care of Missouri, Inc. v. Nevils*, 581 U.S. 87, 95–96 (2017) (citations omitted).

[65] *Empire Healthchoice*, 547 U.S. at 686.

[66] *Health Care Serv. Corp. v. Methodist Hosps. of Dallas*, 814 F.3d 242, 253 (5th Cir. 2016) (internal quotation marks omitted); *see* 5 U.S.C. § 8902(m)(1).

A

Each of Gonzalez's claims against Blue Cross arises either from Blue Cross's refusal to cover proton therapy under the Plan *or* from Blue Cross's reliance on the advance process that the Plan does not mention. Each claim thus places "at issue" Plan terms that "relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits)."[67] To see why, consider each claim individually—

- Count 3, for third-party breach of contract, alleges that Blue Cross denied coverage for proton therapy even though the *Plan's terms* cover radiation therapy.

- Count 4, for breach of contract, alleges that Blue Cross imposed the advance process that the *Plan's terms* do not mention.

- Count 5, for tortious interference, alleges that Blue Cross interfered with Gonzalez's (alleged) employment contract by denying her the rights that the *Plan's terms* guarantee.

- Count 6, for intentional infliction of emotion distress, alleges that the *Plan's terms* did not give Blue Cross any basis to deny proton therapy.

- Counts 7, for fraud, alleges that Blue Cross made false representations about the *Plan's terms*.

- Count 8, for negligent misrepresentation, alleges that Blue Cross misrepresented the *Plan's terms*.

The claims alleging that the Plan covers proton therapy "relate to" the Plan terms that address the "nature" and "extent" of coverage.[68] And

___

[67] 5 U.S.C. § 8902(m)(1).

[68] *Id.*

the claims about the advance process "relate to" the Plan terms that address "payments with respect to benefits."[69] The claims involving the advance process also fail because "[t]ort claims arising out of the manner in which a benefit claim is handled are not separable from the terms of the contract that governs benefits."[70] Prong one, therefore, is satisfied.

B

We next address preemption's second prong—whether the state laws that Gonzalez relies on "relate[] to health insurance or plans."[71] She invokes Texas common law for her tort and contract claims against Blue Cross. These causes of action do not specifically relate to health insurance, but preemption reaches even a state's general laws when their *application* relates to the scope or administration of federal healthcare plans.

"[T]he key phrase, obviously, is 'relat[es] to.' The ordinary meaning of these words is a broad one."[72] The phrase means "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with."[73] It is thus no surprise that the phrase "express[es] a broad pre-emptive purpose."[74] "[A] state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect."[75]

---

[69] *Id.*

[70] *Burkey v. Gov't Emps. Hosp. Ass'n*, 983 F.2d 656, 660 (5th Cir. 1993).

[71] 5 U.S.C. § 8902(m)(1); *see Health Care Serv. Corp.*, 814 F.3d at 253.

[72] *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992).

[73] *Id.* (quoting Black's Law Dictionary 1158 (5th ed. 1979) (internal quotation marks omitted).

[74] *Id.*

[75] *Id.* at 386 (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990)).

No. 22-10062

In an analogous context, the Supreme Court held that ERISA's preemption clause bars common-law tort and breach-of-contract actions that seek "[d]amages for failure to provide benefits."[76] ERISA, like FEHBA, preempts state laws that "relate to" benefit plans. Citing the phrase's "expansive sweep," the Court reasoned that "[t]he common law causes of action raised in [the] complaint, each based on alleged improper processing of a claim for benefits under an employment benefit plan, undoubtedly meet the criteria for pre-emption."[77] The Court has squarely rejected the notion that "laws of general applicability" escape the broad "sweep of the 'relating to' language."[78] FEHBA's preemption clause uses exactly the same language, so the high Court's interpretation compels ours.[79]

Gonzalez's common-law claims seek to hold Blue Cross liable for denying proton therapy and for imposing the advance process. But as just discussed, Blue Cross's actions relate to the Plan's terms.[80] As a result, Gonzalez's common-law claims based on these actions "relate[] to"[81] the Plan as well, and her claims thus "meet the criteria for pre-emption."[82]

---

[76] *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 43, 47–48 (1987).

[77] *Id.* at 48.

[78] *Morales*, 504 U.S. at 386.

[79] *See id.* at 384 (applying ERISA preemption precedents to other preemption statutes containing substantively identical language because the Supreme Court's ERISA precedents "clearly and unmistakably rely on . . . a construction of the phrase 'relates to.'").

[80] *See supra* Part IV.A.

[81] 5 U.S.C. § 8902(m)(1).

[82] *Pilot Life Ins.*, 481 U.S. at 48.

No. 22-10062

Gonzalez argues that our decision in *Corporate Health Insurance v. Texas Department of Insurance* compels a different result, but we disagree.[83] According to Gonzalez, that case means that preemption does not bar state laws that impose duties that are completely separate from and additional to the duties that arise under a healthcare plan. That argument misunderstands the case's holding. In *Corporate Health Insurance*, the defendants wore two "hats"—one as insurer, and one as medical-care provider.[84] True, we held that FEHBA did not preempt a state law that regulated the defendants in their capacity as healthcare providers (rather than insurers).[85] But we also held that FEHBA *did* preempt the state law insofar as that law purported to regulate the defendants in their capacity as insurance-plan administrators.[86] Because Gonzalez seeks to use state law to regulate the way that Blue Cross administers benefits and resolves claims-related disputes, *Corporate Health Insurance* reinforces our conclusion.

FEHBA preempts Gonzalez's common-law claims against Blue Cross, and we therefore affirm the district court's dismissal of those claims.

V

Health insurance is too often maddening. Policy terms can be vague and confusing, insurers might have hidden guidelines that conflict with prevailing medical norms, and procedural hurdles can be byzantine. Here, a confluence of these and other all-too-common complications conspired to

---

[83] *Corp. Health Ins., Inc. v. Texas Dep't of Ins.*, 215 F.3d 526, 539 (5th Cir. 2000), *cert. granted, judgment vacated sub nom. Montemayor v. Corp. Health Ins.*, 536 U.S. 935 (2002), *opinion modified and reinstated in relevant part*, 314 F.3d 784 (5th Cir. 2002), *abrogated on other grounds by Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355 (2002).

[84] *Id.* at 534.

[85] *Id.* at 539.

[86] *Id.*

prevent Gonzalez from making an informed choice about treatment. We sympathize. But under the statutory and regulatory regime that we are bound to apply, no relief is available. We AFFIRM the district court's judgment.